ORIGINAL

ECF

FILED
DEC 1 7 2004
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ARCO MANAGEMENT CORP.
4 Executive Blvd.
Suite 100
Suffern, New York 10901,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 04-1782C

**COMPLAINT**

Plaintiff Arco Management Corp. brings this action against Defendant, the United States of America, acting by and through the United States Department of Housing and Urban Development, and states in support as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Arco Management Corp. is a New York corporation with its principal place of business at 4 Executive Blvd., Suite 100, Suffern, New York 10901. Plaintiff has been a full-service real estate property management company since 1974. Plaintiff has been managing real estate properties under federal government contracts since 1979.

2. Defendant is the United States, acting by and through the United States Department of Housing and Urban Development ("HUD").

3. By a letter dated July 21, 2004, Plaintiff certified its claim arising under and regarding Contract No. C-HOU-00021, Task Order ATL-T0070. A copy of Plaintiff's claim certification is attached hereto as Exhibit A and incorporated herein by reference.

4. On September 17, 2004, Defendant's Contracting Officer issued a final decision denying Plaintiff's certified claim. A copy of the final decision is attached hereto as Exhibit B and incorporated herein by reference.

5. Plaintiff hereby appeals the Contracting Officer's final decision in accordance with the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613. This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491.

## FACTS

### The Contract

6. On July 3, 1997, Plaintiff entered into Contract No. C-HOU-00021 ("the Contract") with Defendant to furnish "the necessary services, materials, equipment, supplies, facilities, professional and technical personnel, and all else necessary" to manage housing projects assigned to Plaintiff in the eastern 21 states, Puerto Rico and the U.S Virgin Islands.

7. Under Modification 17, the Contract was "modified to include specifics regarding [Plaintiff's] management of defaulted, occupied New York City properties insured under HUD's 203(k) program" ("the HUD properties"), effective June 13, 2001. A copy of Modification 17 is attached hereto as Exhibit C and incorporated herein by reference.

8. Under its 203(k) program, HUD insures mortgage loans to encourage lenders to make loans available to borrowers who would not otherwise qualify for conventional loans on affordable terms. This program was authorized by section 203(k) of the National Housing Act.

9. Modification 17 became known as Task Order ATL-T0070 ("the Task Order").

10. The scope of work under the Task Order was very different from that under the original Contract. Among other things, the Task Order required that Plaintiff advance funds

to its subcontractors and then seek reimbursement from Defendant. Under the original Contract, Defendant paid Plaintiff's subcontractors directly. Plaintiff's management fee under the Task Order was only $75 per month per unit. In essence, Plaintiff accepted the Task Order as an accommodation for Defendant.

11. The HUD properties consisted of approximately 150 multifamily buildings in the five boroughs of New York City and Long Island. Most of the buildings were located in the Bedford-Stuyvesant, Brownsville and East New York sections of Brooklyn and the Harlem section of Manhattan.

12. Most of the buildings were three-story brownstones that had been built before 1950. The buildings contained up to six units. Many of the buildings had been abused and neglected for years and were in a state of substantial disrepair, collectively suffering from many hundreds of building code violations, at the time Plaintiff began to manage them.

13. Defendant, through its Contracting Officer, has admitted that "management of the 203(k) properties is a complex and difficult task for any contractor."

14. Under the Task Order, Defendant agreed to pay Plaintiff for management services for the HUD properties "until they are vacated or sold, whichever comes first." Defendant's "priorities" under the Task Order were "to preserve the occupancy of the current tenants lawfully residing in these properties and to address emergency health and safety issues."

15. Modification 1 to the Task Order, effective March 11, 2002, provided that the Task Order would expire on "the date of the sale of the last 203k property assigned to the contractor under this task order. That is, the contractor will continue to manage the New York 203k properties as long as they remain in HUD's possession."

16. Modification 3 to the Task Order, effective June 1, 2003, substituted a new price schedule for the previous task pricing and a new statement of work. The new statement of work provided that Plaintiff would "manage all [HUD] properties already assigned, and those assigned in the future until they are sold or vacated, whichever occurs first."

17. Modification 3 also provided that "the Contractor shall pay service and construction invoices from sub contractors [sic] and the Contractor shall request reimbursement from HUD at least monthly."

18. Pursuant to the Contract, Plaintiff managed its subcontractors and performed other managerial services for the HUD properties. As directed by Plaintiff, and pursuant to the Contract, Plaintiff's subcontractors performed extensive mechanical, electrical, plumbing, boiler, carpentry, dry wall, plastering, painting, locksmith, debris removal, cleanup and other services for the HUD properties, often on an emergency basis. Pursuant to the Contract, Plaintiff submitted invoices to Defendant for services performed.

19. In 2001 and through most of 2002, the parties' performance under the Contract went smoothly. However, in or about November 2002, the United States General Accounting Office ("GAO") made Defendant aware that GAO was investigating Defendant's management of its programs, including its 203(k) program. At the same time, Defendant began withholding payments owed to Plaintiff, including payments for invoices seeking reimbursement of amounts Plaintiff had already paid its subcontractors. GAO issued a report (GAO-03-103) in January 2003 that criticized Defendant's management of its 203(k) program and other programs.

20. As the months passed in 2003, Defendant continued to withhold most of the payments owed to Plaintiff, including reimbursement of amounts that Plaintiff had already

advanced to its subcontractors on behalf of Defendant. However, Defendant expected Plaintiff to continue to perform services, and Plaintiff did so. Due to Defendant's conduct, Plaintiff was not able to pay some amounts owed to its subcontractors, some of which began to refuse to do further work on the HUD properties.

**Termination of the Task Order**

21. On October 23, 2003, the parties executed Modification 004 under which they agreed to terminate the Task Order upon the following terms:

a. Effective October 31, 2003, Plaintiff would no longer have "on-site management responsibilities" for the HUD properties.

b. Plaintiff would submit "all outstanding reimbursable bills" to Defendant by November 28, 2003 and "waive any claim for any reimbursable expenses not submitted" by that date.

c. The parties would "cooperate with each other and to devote whatever reasonable effort is necessary during the period leading up to November 28, 2003 to close out all the open reimbursable invoice matters."

d. Defendant agreed to "review and accept or challenge" in writing each invoice received and, for each invoice challenged, to identify reasons for the challenge. The parties agreed that "[i]f no reason for challenge is identified, then the invoice will be presumed proper for payment."

e. The parties would meet to review the challenged invoices.

f. If any unresolved invoice issues remained after the above meeting, Plaintiff's President and Defendant's Contracting Officer would meet to try to resolve them.

g. If the parties still could not resolve invoice issues, they would submit them to a "neutral third party for some manner of non-binding mediation, arbitration, or alternative dispute resolution."

A copy of Modification 004 is attached hereto as Exhibit D and incorporated herein by reference.

**Defendant's Breaches of Modification 004**

22. In accordance with Modification 004, Plaintiff submitted invoices totaling $330,409.50 to Defendant representing Plaintiff's and its subcontractors' charges for services performed through October 31, 2003.

23. Defendant challenged almost all of the invoices submitted by Plaintiff. However, Defendant failed to identify, in writing, specific reasons for almost all of its challenges.

24. Pursuant to the Modification, Plaintiff requested a meeting between its President and Defendant's Contracting Officer so that they could attempt to resolve the invoice issues, but Defendant refused to agree to such meeting.

25. Pursuant to the Modification, Plaintiff requested that the parties submit the invoice issues to a neutral third party for non-binding mediation, arbitration or alternative dispute resolution, but Defendant refused to agree to such submission.

26. Pursuant to the Modification, the parties had agreed that Plaintiff's management responsibilities for the HUD properties would end on October 31, 2003. However, Defendant failed to take actions to ensure that Plaintiff's management responsibilities would in fact end on that date.

27. During Plaintiff's performance of the Task Order, certain New York City governmental authorities, including without limitation the City of New York Department of

Finance, the City of New York Department of Housing Preservation and Development and the New York City Department of Health and Mental Hygiene ("the New York City authorities"), held Plaintiff accountable as the managing entity responsible for the HUD properties. Defendant was aware of this situation at all times.

28. The New York City authorities would only accept Defendant's notification that Plaintiff was no longer the managing entity responsible for the HUD properties. Plaintiff notified the New York City authorities that it was no longer the managing entity for such properties, but they refused to accept Plaintiff's notification.

29. As a result of Defendant's failure to notify the New York City authorities that Plaintiff was no longer the managing entity responsible for the HUD properties, after October 31, 2003 those authorities continued to hold Plaintiff accountable for such properties by, among other things, charging it with building code violations for such properties and imposing penalties on Plaintiff.

30. Upon information and belief, the New York City authorities are currently holding Plaintiff accountable as the managing entity responsible for 12 of the HUD properties, 11 in Brooklyn and one in Harlem.

31. Plaintiff repeatedly notified Defendant that its failure to notify the New York City authorities that Plaintiff was longer the managing entity responsible for the HUD properties was forcing Plaintiff to perform additional management services and incur additional expenses and liabilities beyond the scope and period of the Contract. Plaintiff's additional management services protected Defendant's interests in the HUD properties. Plaintiff repeatedly notified Defendant that Plaintiff would charge Defendant for the additional management services, expenses and liabilities.

**Plaintiff's Final Request for Payment and Certified Claim**

32. On or about June 11, 2004, Plaintiff submitted its Final Request for Payment to Defendant in the amount of $415,505.30, seeking payment of the following amounts:

a. $330,409.50 for subcontractor invoices (for which Plaintiff provided executed subcontractor certifications with its Final Request for Payment); and

b. $85,095.80 for management fees charged and expenses incurred by Plaintiff after October 31, 2003, including without limitation penalties imposed by the New York City authorities for alleged building code violations and legal fees incurred in defending against such alleged violations.

A copy of the Final Request for Payment attached hereto as Exhibit E and incorporated herein by reference.

33. Defendant failed to pay Plaintiff within 30 days calendar days of its receipt of the Final Request for Payment.

34. Defendant's failure to pay the invoices for services performed by Plaintiff's subcontractors and Defendant's failure to notify the New York City authorities that Plaintiff was no longer responsible for managing the HUD properties after October 31, 2003 represent outrageous, bad faith conduct by Defendant.

35. By a letter dated July 21, 2004 (Exhibit A hereto), Plaintiff certified its Final Request for Payment as a claim in the amount of $413,955.30, plus interest, in accordance with FAR 33.207 and the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613, and submitted its certification to Defendant.

36. On August 6, 2004, Defendant sent a wire transfer to Plaintiff in the amount of $6,948.31 as a partial payment for an invoice from one of its subcontractors. Defendant gave no explanation or backup for this payment.

37. By a letter dated September 17, 2004 (Exhibit B hereto), the Contracting Officer issued a final decision denying Plaintiff's certified claim.

38. Plaintiff has given all contractual notices and met all preconditions necessary for it to recover the amounts requested in its certified claim.

**COUNT I**
**Breach of Contract**

39. Plaintiff restates and incorporates herein by reference paragraphs 1 through 38 of this Complaint.

40. Plaintiff performed the services required under the Contract and submitted proper invoices to Defendant seeking payment for such services.

41. Plaintiff's performance of services under the Contract conferred valuable benefits on Defendant.

42. Defendant's failure to pay Plaintiff's invoices is a material breach of the Contract, including without limitation Section B, Clause 2 (Pricing (Firm-Fixed Price)), Section B, Clause 3 (Project Expenses and Subcontracts), Section C, Clause 6 (Subcontracting) and Section G, Clause 4.0 (Invoice Submission and Payment) of the Contract, the Payments (FAR 52.232-1), Prompt Payment (FAR 52.232-25) and Allowable Cost and Payment (FAR 52.216-7) clauses of the Contract, Sections A and C of the Task Order, and Modification 3 to the Task Order.

43. Defendant's failure to comply with Modification 004 of the Task Order, including without limitation its failure identify specific reasons for its challenges to invoices submitted by Plaintiff, its refusal to agree to a meeting between its Contracting Officer and Plaintiff's President, its refusal to submit the challenged invoices to a neutral third party for non-binding mediation, arbitration or alternative dispute resolution, and its failure to pay Plaintiff's invoices submitted under Modification 004 are material breaches of the Contract.

44. Defendant's failure to notify the New York City authorities that Plaintiff was no longer responsible for managing the HUD properties after October 31, 2003 is a material breach of the Contract.

45. Plaintiff fulfilled all of its obligations under the Contract.

46. Plaintiff has fulfilled all conditions precedent to recovery under this cause of action.

47. As a direct and proximate result of Defendant's breaches of the Contract, Plaintiff has suffered damages in an amount totaling at least $407,006.99.

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

48. Plaintiff restates and incorporates herein by reference paragraphs 1 through 47 of this Complaint.

49. An implied covenant of good faith and fair dealing exists in the Contract.

50. Pursuant to Modification 004, the parties agreed that Plaintiff's on-site management responsibilities for the HUD properties would end on October 31, 2003.

51. The Contract's implied covenant of good faith and fair dealing required that Defendant take actions to ensure that Plaintiff's management responsibilities for the HUD properties would in fact end on October 31, 2003.

52. Defendant failed to take actions to ensure that Plaintiff's management responsibilities for the HUD properties would end on October 31, 2003 by its failure to notify the New York City authorities that Plaintiff no longer had management responsibilities for such properties.

53. As a result of defendant's failure to notify the New York City authorities that Plaintiff no longer had management responsibilities for the HUD properties, Plaintiff was forced to continue management services and incur expenses after October 31, 2003, including without limitation penalties imposed by the New York City authorities for alleged building code violations and legal fees for defending against such alleged violations.

54. The services Plaintiff performed and expenses it incurred after October 31, 2003 protected Defendant's interests in the HUD properties and thus conferred valuable benefits on Defendant.

55. Plaintiff has fulfilled all conditions precedent to recovery under this cause of action.

56. As a direct and proximate result of Defendants' breach of the Contract's implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount totaling at least $85,095.80.

**COUNT III**
**Actual or Constructive Change of the Contract**

57. Plaintiff restates and incorporates herein by reference paragraphs 1 through 56 of this Complaint.

58. Pursuant to Modification 004, the parties agreed that Plaintiff's on-site management responsibilities for the HUD properties would end on October 31, 2003.

59. Defendant failed to take actions to ensure that Plaintiff's management responsibilities for the HUD properties would in fact end on October 31, 2003 by its failure to notify the New York City authorities that Plaintiff no longer had management responsibilities for such properties.

60. As a result of defendant's failure to notify the New York City authorities that Plaintiff no longer had management responsibilities for the HUD properties, Plaintiff was forced to continue management responsibilities and incur expenses after October 31, 2003, including without limitation penalties imposed by the New York City authorities for alleged building code violations and legal fees for defending against such alleged violations.

61. The Contract's Changes clauses (FAR 52.243-1 and 52.243-2) and Notification of Changes clause (FAR 52.243-7) require that Defendant compensate Plaintiff for additional or changed work under or relating to the Contract.

62. By failing to notify the New York City authorities that Plaintiff no longer had management responsibilities for the HUD properties, Defendant actually or constructively changed the Contract under its Changes and Notification of Changes clauses and assumed liability for the management fees charged and expenses incurred by Plaintiff after October 31, 2003, including without limitation penalties imposed by the New York City authorities

for alleged building code violations and legal fees incurred in defending against such alleged violations.

63. The services Plaintiff performed and expenses it incurred after October 31, 2003 protected Defendant's interests in the HUD properties and thus conferred valuable benefits on Defendant.

64. Plaintiff has fulfilled all conditions precedent to recovery under this cause of action.

65. As a direct and proximate result of Defendant's actual or constructive change of the Contract, Plaintiff has suffered damages in an amount totaling at least $85,095.80.

**COUNT IV**
**Declaratory and Injunctive Relief**

66. Plaintiff restates and incorporates herein by reference paragraphs 1 through 65 of this Complaint.

67. Upon information and belief, the New York City authorities are currently holding Plaintiff accountable as the managing entity responsible for at least 12 HUD properties.

68. The New York City authorities will only accept Defendant's notification that Plaintiff is no longer the managing entity responsible for the HUD properties.

69. As long as the New York City authorities continue to hold Plaintiff responsible for the HUD properties, Plaintiff will remain at risk of being charged with additional building code violations, being ordered to pay penalties, having to pay legal fees for defending against such alleged violations, and suffering irreparable harm by damage to its business reputation and loss of customer goodwill.

70. Plaintiff has fulfilled all conditions precedent to recovery under this cause of action.

71. Plaintiff is entitled to immediate declaratory relief declaring that Plaintiff is no longer responsible for managing any of the HUD properties and injunctive relief requiring that Defendant notify the New York City authorities that Plaintiff is no longer responsible for managing any of the HUD properties.

**PRAYER FOR RELIEF**

Plaintiff Arco Management Corp. requests that the Court:

A. Enter a judgment in favor of Plaintiff and against Defendant for at least $407,006.99 plus interest as provided by the Contract Disputes Act of 1978, 41 U.S.C. § 611, and the Contract, attorneys' fees and costs;

B. Grant immediate declaratory relief declaring that Plaintiff is no longer responsible for managing any of the HUD properties and injunctive relief requiring that Defendant notify the New York City authorities that Plaintiff is no longer responsible for managing any of the HUD properties; and

C. Grant such other legal or equitable relief as the Court deems proper.

Date: December 15th, 2004

Respectfully submitted,

Ronald S. Perlman
Buchanan Ingersoll P.C.
1776 K Street, NW
Suite 800
Washington, DC 20006
(202) 452-7900
(202) 452-7989 (fax)
Counsel for Plaintiff Arco Management Corp.

Of Counsel:
Susan Warshaw Ebner, Esq.
Buchanan Ingersoll P.C.
1776 K Street, NW
Suite 800
Washington, DC 20006
(202) 452-7900
(202) 452-7989 (fax)

Kenneth S. Nankin, Esq.
Nankin & Verma PLLC
888 Seventeenth Street, NW
Suite 700
Washington, DC 20006
(202) 463-4911
(202) 463-6177 (fax)