ARCO
MANAGEMENT CORP.

June 11, 2004

**BY FEDERAL EXPRESS**

Maureen Musilli
Contracting Officer
U.S. Department of Housing and Urban Development
The Wanamaker Building
100 Penn Square East
Philadelphia, Pennsylvania 19107-3380

Re: Arco Final Request for Payment - 203(k) Program: Contract No. C-HOU-00021, Task Order ATL-T0070

Dear Ms. Musilli:

Pursuant to Section B, Clause 2 "Pricing (Firm-Fixed Price)", Page B-1 of the above referenced contract, Arco Management Corp. ("Arco") hereby requests payment in the amount of $415,505.30. The request for payment covers ten items, in two major categories: (1) Arco expenses post-October 31, 2003 and (2) unpaid subcontractor invoices. The breakdown of the request for payment is as follows:

1. Arco - $85.095.80; (Attachment 1)
2. A.T.S. Mechanical Contractors - $11,587.98; (Attachment 2 & 3)
3. Controlled Plumbing Co., Inc. - $96,750.78; (Attachment 4 & 5)
4. Drimart Restoration Corp. - $97,324.60; (Attachment 6& 7)
5. Lockman, Inc. - $9,428.09; (Attachment 8 & 9)
6. M. Farbman & Sons, Inc. - $25,593.93[1]; (Attachment 10)
7. MSC Restorations - $8,698.00; (Attachment 11 & 12)
8. RAM Building - $19,127.00; (Attachment 13 & 14)
9. Total Boiler Care, Inc. - $50,710.11; and (Attachment 15 & 16)
10. TUCS Services, Inc. - $11,189.01. (Attachment 17& 18)

Total: $415,505.30

[1] M. Farbman & Sons, Inc. alleges that it is owed $25,593.93. Arco's records indicate that M. Farbman & Sons, Inc. is owed $15,611.83. M. Farbman & Sons, Inc. has not certified its claim that it is owed $25,593.93. The difference between Arco's records and Farbman's alleged claim relates to the boiler which was not entirely installed at 323 Quincy Street but HUD was made aware of all actions that needed to be taken to complete this installation in the closeout documents as part of Mod 4.

Supporting documentation for Arco's request is attached hereto in attachments 1-18. The supporting documentation attached to this letter consists of a listing of necessarily incurred Arco expenses in connection with management of the 203(k) properties covered under the contract subsequent to October 31, 2003 (attachment 1) and listings of unpaid invoices (identified by work item and property) for each of the above-identified subcontractors (attachment 2-18). Documentation supporting all expenses for Arco is maintained at our offices, and is available for your inspection upon request. Since most of the subcontractor invoice support material has already been produced to your office (relating to $345,304.90 in invoices), it is not being forwarded again. The remainder (relating to $70,200.40 in subcontractor invoices) that has not been submitted previously was either not received in a timely manner by our office from the subcontractor or (in a very limited number of instances) was inadvertently misplaced by our office through the last submission of sub-contractor invoices. These previously not-submitted invoices should be included for payment with the rest of the invoices already submitted to HUD because they are for legitimate work, which was done by our subcontractors on HUD's properties and it would be unfair and unethical to not pay amounts properly due because of a formalistic technicality.

Arco's direct expenses were incurred in connection with necessary management activities subsequent to October 31, 2003 relating to building code violations for your 203(k) properties that should have been taken care of by the management contractor (NHG) that replaced us on that date, but who failed to notify the proper New York City authorities in the proper fashion that they had replaced us, and who you did not ensure accomplished this substitution notwithstanding our repeated requests to do so, and are proper for payment under the Changes Clause of the contract [FAR 52.243-1 at page I-5 of the contract] as for a constructive change to the contract. Also, entitlement to collect costs associated with continuation of property management functions because of the failure to have NHG assume management responsibility with New York City violates Section 1.5 of the October 23, 2003 Modification 0004 agreement that "transition duties ...will cease at contract/task order expiration, October 31, 2003." Since you failed to act so that Arco's management duties would not continue on beyond that date, you are accountable now for that failure. We forewarned you on multiple occasions that we would seek collection of these costs, and this communication is in keeping with those warnings. I am certain that you are well aware of all our communications regarding this issue, so I will not repeat them here.

To repeat, this final request for payment is for work performed in accordance with the Contract. We understand that by your letters dated November 3, 2003 and November 4, 2003 and emails dated January 27, 2004 from Cardell Johnson and February 13, 2004 from Alan Ruscoe, both of your office, you have already declined to make payment on many of the subcontractor invoices covered under this Final Request for Payment. However since the invoices and Arco's expenses are proper for payment in accordance with Section B, Clause 2 "Pricing (Firm-Fixed Price)", Page B-1 of the Contract, we are making a Final Request for Payment.

If you expressly deny this Final Request for Payment, or if you fail to respond to it within thirty (30) calendar days from its date, then Arco will understand that you are denying Arco's

Final Request for Payment and that there is a dispute with respect to this claim. Arco will then certify its Final Request for Payment as a claim under FAR 33.207 and request a contracting officer's Final Decision under FAR 33.211. Upon receipt of your Final Decision, or in its absence, we will then proceed accordingly.

If you have any questions about this Final Request for Payment, please contact me immediately at the telephone number above.

Very truly yours,

Jeffrey P. Goldstein
President

Copy to:
Ronald S. Perlman, Esq. Buchanan Ingersoll, PC
A.T.S. Mechanical Contractors
Controlled Plumbing Co., Inc.
Drimart Restoration Corp.
Lockman, Inc.
M. Farbman & Sons, Inc.
MSC Restorations
RAM Building
Total Boiler Care, Inc.
TUCS Services, Inc.

**Attachment No. 1**

## Arco Management Corp

**Unpaid Invoices and Secondary Claim Amounts**

| ITEM #'S | | DESCRIPTION | Address/Comment | Amount | |
|---|---|---|---|---|---|
| 1 | V591 & V592 | TUCS Services Invoices Paid by Arco Management Corp Various Letters sent | Various Addresses | $ 11,081.64 | |
| 2 | V335 | Arco Invoice 335 Con Ed | | $ 1,995.56 | |
| 3 | V371 | Arco Invoice 371 Keyspan | | $ 3,092.00 | |
| 4 | V410 | Arco Invoice 410 Statewide Oil and Heating | | $ 1,127.00 | |
| 5 | V454 | Arco Invoice 454 Con Edison | | $ 228.57 | |
| 6 | V456 | Arco Invoice 456 Statewide Oil and Heating | | $ 81.53 | |
| 7 | V533 | Arco Invoice 533 Statewide Oil and Heating | | $ 196.78 | |
| 8 | V593 | Arco Invoice 593 Con Edison | | $ 148.89 | |
| 9 | V593 | | | $ 184.55 | |
| 10 | | Oil Tank Cleaning at 159 E 117th St | | $ 583.68 | ** |
| 11 | | Cost of Handling Violations Issued By The City of New York ECB after October 31 Closeout date Paid to City of New York | 530 Bainbridge | $ 1,000.00 | |
| 12 | | Cost of Handling Violations Issued By The City of New York ECB after October 31 Closeout date Paid to City of New York | 265 Wyckoff | $ 960.00 | |
| 13 | | Cost of Handling Violations Issued By The City of New York ECB after October 31 Closeout date Paid to City of New York | 530 Bainbridge | $ 1,000.00 | |
| 14 | | Cost of hiring representation to defend violation at 245 Irving paid to Amsterdam and Lewintewr | 245 Irving | $ 920.00 | |
| 15 | | Cost of hiring representation to defend violation at 530 Bainbridge paid to Amsterdam and Lewinter | 530 Bainbridge | $ 750.00 | |
| | | Cost of hiring representation to defend violation at 530 Bainbridge paid to Amsterdam and Lewinter | 530 Bainbridge | $ 770.00 | |
| 16 | | Estimated cost of continued legal fees for violations | | $ 2,000.00 | |
| 17 | | Violation (Ref #40994671)-unpaid contingent liabilities | 245 Irving | $ 1,000.00 | |
| 18 | | Violation (Ref #108-739-30J)unpaid contingent liabilities(decision reserved March 16, 2004) Letter sent to HUD November 2003 for this | 255 Wyckoff | $ 4,000.00 | |
| 19 | | Violation (Ref #108-739-36K)unpaid contingent liabilities(decision reserved March 16, 2004) Letter sent to HUD November 2003 for this | 255 Wyckoff | $ 2,000.00 | |
| 20 | | Violation (Ref #108-739-31L)unpaid contingent liabilities (decision reserved March 16, 2004) Letter sent to HUD November 2003 for this | 255 Wyckoff | $ 1,000.00 | |
| 21 | | Cost of hiring representation Amsterdam and Lewinter to defend violations (Item numbers 18,19,20 above) | 255 Wyckoff | $ 800.00 | |
| 22 | | Estimated Time and Travel Expenses Jason Phillips Arco Management Jan & Feb 2003 | Gas | $ 100.00 | * |
| 23 | | Estimated Time and Travel Expenses Jason Phillips Arco Management Jan and Feb 2003 | Tolls & Parking | $ 100.00 | * |
| 24 | | Estimated Time and Travel Expenses Jason Phillips Arco Management for legal | Payroll Expense (17.50/hr x 40 hrs) | $ 700.00 | * |
| 25 | | Administrative Work Due to Non Payment of Contractors (Jason Phillips 200hrs@$17.50 for extensive review of vague HUD letter of invoice rejection, thorough research of contractor invoices ie Total Boiler, Controlled Plumbing, DriMart Restoration. Preparation of letters and spreadsheets for review by legal counsel, meetings with MSC Restoration, Total Boiler and Controlled Plumbing. Travel to Philadelphia for meetings. | Estimated | $ 3,500.00 | * |
| 26 | | Administrative Work Due to Non Payment of Contractors (Jeffrey Goldstein 100hrs@$200 for extensive review of vague HUD letter of invoice rejection, thorough research of contractor invoices ie Total Boiler, Controlled Plumbing, DriMart Restoration. Preparation of letters and spreadsheets for review by legal counsel, meetings with MSC Restoration, Total Boiler and Controlled Plumbing. Extensive phone conversations with legal counsel for both resolution of violations and resolution of unpaid contractor invoices. Travel to Philadelphia for meetings. | Estimated | $ 20,000.00 | * |
| 27 | | Administrative Work Due to Non Payment of Contractors ( Anne Smith 100hrs@$20) Preparation of letters to contractors, correspondance with HUD, creation of spreadsheets for unpaid invoices. Correspondance to various housing authorities to get the Arco name removed from the registrations and violations. | Estimated | $ 2,000.00 | * |
| 28 | | Administrative Work Due to Non Filing of Buildings with NYC HPD which includes letters mailed to HUD and NYC ECB and HPD, fed ex packages to HUD and correspondance to HUD. | Estimated | $ 2,000.00 | * |
| 29 | | Contract Administration Counseling for Untimely transition of properties to NHG and untimely payment and unresponsiveness by HUD (November) | | $ 8,085.00 | |

| | | | | | |
|---|---|---|---|---|---|
| 30 | | Contract Administration Counseling for Untimely transition of properties to NHG and untimely payment and unresponsiveness by HUD (December) | | $ 2,240.00 | |
| 31 | | Contract Administration Counseling for Untimely transition of properties to NHG and untimely payment and unresponsiveness by HUD (January) | | $ 3,891.25 | |
| 32 | | Contract Administration Counseling for Untimely transition of properties to NHG and untimely payment and unresponsiveness by HUD (February) | | $ 1,354.46 | |
| 33 | | Contract Administration Counseling for Untimely transition of properties to NHG and untimely payment and unresponsiveness by HUD (March) | | $ 2,625.00 | |
| 34 | | Contract Administration Counseling for Untimely transition of properties to NHG and untimely payment and unresponsiveness by HUD (April) | | $ 3,579.89 | |
| | | | Total | $ 85,095.80 | |
| | | | | | |
| | | | | | |
| | *These are reasonable estimates of the expenses incurred by Arco. Arco is unable to determine | | | | |
| | the exact amount because, at the time the expenses were incurred, Arco did not anticipate that | | | | |
| | it would continue to incur expenses after its contractual obligation to manage the properties had terminated. | | | | |
| | As a result, Arco did not retain all of the receipts. | | | | |
| | | | | | |
| | (**) Invoices that have not yet been seen by HUD | | | | |

**Attachment No. 2**

## Certification of Claim

I hereby certify that the claim for $11,587.98 is based on the unpaid invoices shown on the attachment to this certification. I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the amount which A.T.S. Mechanical Contracting believes that the Government is liable; that I understand and acknowledge that this certification is subject to the False Claims Act (18 U.S.C.A. Section 287 and False Statements Act (18 USC Section 1001); and that I am duly authorized to certify the claim on behalf of A.T.S. Mechanical Contracting.

Name: M. TARNAPOL

Title: PRESIDENT

6/2/04
(Date)

**Attachment No. 3**

# A.T.S. Mechanical Contracting

**Unpaid Invoices**

| Invoice # | Description | Address | | Amount | |
|---|---|---|---|---|---|
| 55681 | Removed/replaced water supply line to toilet, repaired leak | 1516 Jefferson | $ | 240.11 | * |
| 57072 | Cleared stoppage (disconnected trap/waste ells, ran electric sewer machine) | 978 A Myrtle | $ | 477.20 | * |
| 57085 | Replaced flushometer handle, repaired leak | 706 Essex | $ | 398.49 | * |
| 57086 | Replaced pipe/tub spout | 30-01 Seagirt | $ | 238.84 | * |
| 57087 | Checked heating system, tightened wire connection, installed thermostat, tested | 30-01 Seagirt | $ | 199.72 | * |
| 57089 | Replaced shower body | 30-01 Seagirt | $ | 637.34 | * |
| 57114 | Replaced vanity/sink/faucet/waste line/connections | 2781 Atlantic | $ | 638.00 | * |
| 57115 | Replaced hot water heater | 102 Sunnyside | $ | 638.50 | * |
| 57116 | Replaced shower body | 706 Essex | $ | 516.39 | * |
| 55671 | Replaced toilet bowl gasket, reset, installed lead bend, ran electric sewer machine thru line | 857 Knickerbocker | $ | 763.83 | * |
| 56064 | Emergency Call: Replaced shower body, restored water, tested | 276 MacDougal | $ | 1,143.06 | * |
| 56841 | Emergency Call: Cleared main line stoppage w. electric machine | 83 Truxton | $ | 290.55 | * |
| 54521 | Replaced hot water heater | 350 Crescent | $ | 728.18 | * |
| 55590 | Checked system, installed controls/thermostat, tested | 30-01 Seagirt | $ | 893.75 | * |
| | | **Total** | $ | 7,803.96 | |
| 56842 | Boiler Room replace fuse in water feeder | 450 E 118th | $ | 521.40 | ** |
| 54656 | | 794 Madison | $ | 1,387.20 | ** |
| 56899 | Basement stoppage ran electric sewer machine | 528 Bainbridge | $ | 410.06 | ** |
| 56936 | Apt 2L toilet stoppage pit bull would not allow access | 1424 DeKalb | $ | 317.19 | ** |
| 57007 | Emergency call tenant would not allow access | 703 DeKalb | $ | 510.54 | ** |
| 57088 | Repaired shower body spindle and repaired heating system | 3001 Seagirt | $ | 637.63 | ** |
| | | **Total** | $ | 3,784.02 | |
| | | **Grand Total** | $ | 11,587.98 | |

(**) Invoices that have not yet been seen by HUD
(*)Partial payment by HUD without reasoning or explanation

**Attachment No. ~~2~~ 4**

## Certification of Claim

I hereby certify that the claim for $96,750.78 is based on the unpaid invoices shown on the attachment to this certification. I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the amount which Controlled Plumbing believes that the Government is liable; that I understand and acknowledge that this certification is subject to the False Claims Act (18 U.S.C.A. Section 287) and False Statements Act (18 USC Section 1001); and that I am duly authorized to certify the claim on behalf of Controlled Plumbing.

Name: George Bussolini

Title: Pres.

4-12-04
(Date)